That said, first case up, USA v. Alexandra Carmona-Ramos. Alright, Ms. Greenberg. Good morning, Your Honors. May it please the Court. Laura Greenberg for Alejandra Carmona-Ramos. Ms. Carmona was convicted of alien transportation for financial gain. On appeal, we argue first that the evidence was insufficient to support that conviction. We also argue that the District Court reversibly erred in admitting testimonial hearsay used to prove the alienage and illegal entry or presence elements of the offense. Let me ask you a question out of the box. Looking at the indictment, you say, is the indictment charged in the conjunctive, where there is the language intent there, or do you argue that, I mean, the way the indictment is framed, the government's got to touch all the bases in there, prove the actual transport of an illegal alien by her and the attempt itself, or can the government be saved if, as they argue, they prove the attempt? Your Honor, we don't challenge the sufficiency of the indictment. We argue that the attempt theory that the government argued at trial and is arguing on appeal is not an attempt that is covered in the criminal code, that they are arguing a different type of attempt, that the attempt that is contained within the structure of the alien transportation statute itself only modifies the verb transport, so that they are going beyond the attempt contained in the indictment. Let me ask a question because it's been a while since I've had one of these cases that was put forward as an attempt. The jury instructions here are not attempt jury instructions. They're except for the paragraph that tracks the attempt portion of the indictment, but otherwise it's a substantive count. So if the government wanted to use an attempt theory, wouldn't the jury instructions have to reflect that? I don't know. I mean, literally, you may say, my God, I can't believe a judge on the Fifth Circuit would be asking a question that dumb, but my question is, wouldn't the jury instructions have to mirror an attempt? I think that the instructions should have and would have if the government was proceeding on the attempt theory that it is asking this court to affirm the conviction on. The government did not ask for an attempt instruction, and the government did not object when the jury was instructed on the substantive elements of the attempt statute. Right. I agree with Judge King. We have a pattern instruction for attempt, and they didn't request it and you didn't request it. That's correct. But maybe I slightly disagree with you that that pattern instruction would apply regardless of the federal substantive offense. For example, the Mann Act, it's got an attempt provision in one of the elements. I don't know of any case that says we don't just, as to any attempt, wherever the attempt is or even not, it wouldn't be covered by the pattern instruction. I think that's correct. So your argument, you're not, you're certainly not disagreeing with the jury instructions. So as I see it, the government embraced all the required elements of a 1324 prosecution. That's correct, Your Honor. But you didn't object when the court said as to the transportation element, it could be met by an attempted transportation. So here's my question. If your argument is just one of evidentiary insufficiency, but you agree the jury instructions to the jury that found guilt are correct, which of the elements for 1324 wasn't shown? The evidence failed to show that Carmona attempted to transport the specific alien alleged in the indictment, that she specifically attempted to transport Allende. What's your case that says she has to have specific knowledge of the identity of the alien? The 1324 pattern instructions, the first element is just that Ann, not the, Ann alien entered the United States. That's correct. But the defendant has to, there has to be proof that the defendant attempted to transport the alien that is. Well, you said the, but it says Ann. And the indictment didn't say Allende. It said a certain alien. What's your case that says the government's got to prove knowledge not of Ann alien, but of the alien? It's a basic concept of notice that when the government is proceeding on a certain. But what's your case? Because the logic of that would say the government can never do a sting, drugs or aliens. They can never put in an undercover agent because, of course, at that point you wouldn't be attempting to transport or move that person. The correct identified individual. I think that the alien transportation statute is distinct from the attempt provision in the drug statute. What's your best case that says that the defendant has to have knowledge of the specific alien? There's a case that's cited in our brief, Robles-Vartis, where the argument was the government alleged a certain alien by name. But the proof. You see, at that point you do have a constructive amendment problem. If the government's going to name them by name and then they've got somebody else, that may be a problem. But here the indictment said a certain alien. That's correct. Okay. And I think that the proof had to show that she, in fact, did intend to transport the only alien involved in this offense. But she confessed. She made a confession. And even before she confessed, she whispered to Davale when she still thought he was undercover, you know, I've got a kid. I can't get caught up in this alien smuggling thing. So that would suggest she knew that she was going to attempt to transport an alien. I believe that she believed that the agent was an undocumented alien. That's correct. But my argument is that the attempt, as it's used in the alien transportation statute itself, is not an attempt that can cover the general attempt. It doesn't apply globally to the offense itself. So Congress did not make an attempt to commit the substantive offense a crime in and of itself. And the government argued because it could not prove that Carmona attempted to transport the actual alien, this alternative attempt theory, that that was not a valid theory to proceed on. Well, it could have been if they had gotten the right attempt instruction, but they didn't, right? Well, that's correct. They did not ask for an attempt instruction. The jury was not instructed on anything but the substantive elements, which required that they find that she attempted to transport such alien, the alien involved in the offense. And that alien was Allende. The government clarified and argued to the jury that that is who the alien was. But the evidence did not connect her with that particular alien. Well, that's, I mean, that's, I guess that was up to the jury, right? You say evidence didn't connect her to that alien, but I thought the government offered cell phone connections from Allende to the kingpin, the woman, Concha or whatever. Concha. Concha. And then in turn, we had, the government had evidence connecting Concha to defendant Ms. Carmona. And I believe the government is trying to say that Concha's subjective awareness can be imputed to Carmona. But this was not charged as a conspiracy or as an aiding and abetting, which might have allowed for that type of concerted action on the part of Carmona. If there are no other questions on the first point, I'd like to just make a couple of points about the testimonial hearsay. The government argued that there was a certain alien and that that alien was Allende. Under our theory that the government was required to prove what the instructions told the jury they must find, that there was an alien, that he illegally entered the country, the testimonial hearsay that we complained about was harmful to Carmona. Allende was apprehended by a border patrol agent who had been responding to an alert that there was an entry, an illegal entry by someone. Suspecting that Allende was this person, the border patrol agent detained him, questioned him, and the alien confessed that he was a Mexican citizen who did not have documents to be in the country lawfully. That was the strongest, most direct evidence to show that there was an alien who illegally entered the country. And under this court's precedent, that is a requirement. It's not just the belief on the part of the defendant that there was an alien who illegally entered. The objective fact that there was an alien who illegally entered the country must be shown. But the same agent testified, I saw this person run across the border. There was no hearsay in that description, correct? I don't think that was. That wasn't his testimony? He saw the alien on the border highway. He didn't see him cross the border. He was responding to an alert by another agent that someone, someone had illegally entered the country. He was looking for someone who may have been that person, and he focused his interest on Allende. So Agent Lurch is on the stand, and the government says, what's the question that elicits the hearsay? The government asked the agent, what did Allende say? What did this man say? And the agent said, I questioned him as to his citizenship. He said, I'm a Mexican citizen, no documents to be illegally in the country. And then that was what the government was allowed to put on over our confrontation and Crawford objection. We had moved pretrial to try to keep out this evidence, but the government fought to put on that evidence because they needed it, because there would have been a gap in the case without it. What was the government's response to the objection? I mean, you're arguing it's hearsay. What, I mean, the district court's ruling didn't really say, but what was the government's response to your hearsay, confrontation, Crawford objection? What was their basis for? I believe they argued that. It wasn't hearsay? It wasn't hearsay. It wasn't testimonial. That they were putting it on for non-hearsay reasons. But it clearly was. The district court didn't articulate its. When you make your objection and the government responded, did the district court say, oh, no, this is 801 not being offered for the truth of the matter, or this is 803 whatever exception, state of mind, whatever. I believe the district court said that this was being allowed for a non-hearsay purpose. Not for the truth of the matter. It's just background, like he's a Mexican citizen, doesn't establish illegal. I'm not sure the district court articulated a reason, but certainly denied our request to have this evidence excluded. And when the evidence was put on, there was no limiting instruction, certainly. Did you ask for a limiting instruction? We did not. We objected to the evidence in total and didn't believe there was a non-hearsay. Is that the only hearsay moment in the entire trial? That statement, no. He said, no, I don't have documents. That one sentence. There were other hearsay moments, other Crawford, but as to that particular evidence. You're alleging reversible error because hearsay came in against Crawford. Is there any sentence other than that witness's, Lurch's statement, he told me he had no papers? I don't believe so. And is there anything in the government's closing argument that connected element one, illegal alien, to Lurch's testimony? The government didn't specifically refer to agent Lurch's testimony, but argued to the jury, you have to find that there is an alien who illegally entered or remained. We know we have that. That's Allende. He was illegally present. Okay. But didn't she confess? Her own confession was that I was coming to pick up an illegal alien. So how would, when you say this is the best evidence, this statement by Lurch as to what Allende said, why wouldn't her confession make any possible hearsay in that harmless? She confessed that she believed that the man who she was meeting and transporting was an undocumented alien. So why isn't that conclusive? In fact, I don't remember your closing argument at all contesting that there wasn't an illegal alien. You just said she didn't have that state of mind. No, I believe I'm contesting the evidence on the proof that Allende was an illegal alien, was an undocumented alien who entered unlawfully. But if the defendant herself, if the jury heard the defendant herself say, I knew he was an undocumented alien. May I answer the question? Sure. Again, it goes back to what is required to be proved in this case. She knew nothing of Allende. She knew nothing of his presence, his entry. She had no understanding of what his plan was to further violate the law. All right. Thank you. You've preserved some time for us, but thank you. All right, we'll hear from the government. Ms. Friel. May it please the Court, my name is Jennifer Friel, and I represent the United States. I want to begin with an argument that was in the reply brief of Carmona Ramos, which stated that factual impossibility isn't the issue in this appeal because she's challenging the sufficiency of the evidence. But as I review the case and the case law cited in the United States brief, factual impossibility really is the touchstone here. Factual impossibility exists when a defendant unquestionably intends to engage in the conduct prescribed by law but fails only because of circumstances unknown to her. In the case that is most on point, which is cited in our brief, the Medina case out of the First Circuit, the defendant in that case attempted to transport illegal immigrants into the United States. He was in Puerto Rico. Was an attempt instruction given? In that case, it didn't turn on the instructions. The challenge was the sufficiency of the evidence. Right, but your brief is almost fully written in response to the insufficiency as well. All we had to show was intent and a substantial step. Yes, Your Honor, and we did not have that instruction. So the brief confused me a lot. You can't argue that. You can't rely on a theory that wasn't presented to the jury. That may have been a valid legal theory, but we don't know that the jury— Well, the jury wasn't instructed on it. Okay, but so therefore, why are the sort of 10 pages, 15 pages of your brief at all relevant to how we would decide this case? We can't say, oh, well, properly instructed the verdict would stand. I don't think that is perhaps the best approach for the opinion in this case. I think factual impossibility and sting operations is the better approach. Okay, but no, I just want to be clear. Because the vast majority of the government's brief says we should affirm the jury verdict because there was proof of intent and a substantial step, but the jury was never instructed they could convict on that. So all of that argument is not legally correct, not just not the better one. We can't rule that way. Would you agree? Well, there is a case, the Crow case, out of this circuit. It was an attempt case, and the actual challenge was to the jury charge. And there was not an attempt instruction, but this court affirmed and held that it was not plain error. Yeah, but I see this is where I got very confused by your brief. You're saying that we should review the government's error for plain error because they didn't ask for a more difficult standard of proof? Why would they ever want to have the 1.32 pattern instruction if you're not asking for it? You took a higher proof burden, right? Correct. So why is it their error to object to that? They would never have a reason to object to that. And, Your Honor, in all honesty, I did not draft the brief, and I don't think that is the best approach. Okay. I do think factual impossibility, which I think the opening argument touched on, is really where the rubber meets the road here. Okay, and I'll stop badgering, but if, therefore, we have to assess this as to whether sufficiency is to all four elements, then you do have a problem with an inchoate crime because the first element is that an alien entered. But she, yes. Okay. And she says the only proof you offered was a hearsay statement. That is not correct. That is where I differ from the, certainly. It's not correct because there was other proof, or it's not correct because it's not hearsay? There was significant evidence. In fact, in rereading the record, Carmona's counsel actually conceded that Allende was in the country illegally because on cross-examination of Del Valle, the undercover Border Patrol agent, they asked the question saying that Allende was an undocumented alien. On the Crawford issue. Wait, wait, but Del Valle? Okay. Their counsel asked a question saying, but she never met the undocumented alien, Allende. Yeah, but was that after the government was able to ask and elicit the hearsay answer? Lurch was first. Yes, Your Honor. So Lurch gets it in. Of course they're going to cross-examine at that point because the damage has been done. So we have that as well, the cross-examination question. We also have the testimony from Agent Cardenas, unobjected to testimony that the phone that was used in this undercover operation belonged to a person who had illegally entered the country. We also have, while we didn't have direct eyewitness testimony of him crossing the border, we have the exchange where the agent, Lurch, was told that there had been an alert, someone had crossed, and he sees Allende crossing a major highway where pedestrians do not cross and attempting to jump a fence. The key case in Crawford that's cited in both briefs is the De Leon case, which I understand that you wrote in 2013. And in De Leon, the issue was a 1326 reentry and whether or not the defendant had citizenship through his mother. And the issue was whether his mother had lived in the country long enough, that she would have been qualified as a U.S. citizen. And it was the issue of trial. Both sides were saying, one was saying, yes, she had been here long enough. The other was saying, no. And an affidavit of the grandmother was entered into evidence. And the affidavit was key to this issue because the grandmother said, no, my daughter didn't live in the country long enough. And the court said, this is Crawford. They reversed. That was the issue in that trial. In this case, everyone pretty much agreed that Allende had entered illegally. In the briefing, there's no explanation of how she would have wanted to cross Allende, how this was a critical issue. The defense theory at trial was on a whole different element, on the element of the intent to further the presence of the United States. They had the theory that— Are you making a harmlessness argument? Yes. Why don't you start with whether the government concedes it was an error? Well, I think the best argument is harmlessness. Okay. And so I want to spend my time on that. And compare it to the key case, which is De Leon. I think comparing cases— So the government's argument at trial to the district judge, which the district judge embraced, was mistaken. This is not legitimate background not being offered. I do think that is an argument to make, that we weren't offering this for the truth of the matter. It was showing why this whole thing started. Her belief was the key because it was an attempt. Her belief is the key. But this applies the key element to your case. How in the world can it not be offered for the truthfulness of— I mean, how in the world can it be offered for other than the truthfulness of what's said when it satisfies an element of the case? I don't understand that. That's where we get a little bit back to the factual end. Well, we're not back to the facts. We're back to the hornbook hearsay. I like hearsay to me. It's offered for the truthfulness of what's said. It satisfies an element. Trial judge doesn't really say. Just says it comes in. Ergo, let the Fifth Circuit figure it out. So that's why I asked the other. What was your response to the objection of the admissibility of it? Did you argue that it was non-hearsay? I had the benefit of being able to look at the trial transcript, and I looked back at that page, and I pulled it, and there was an objection, and the court quickly said overruled. All right. We're moving past that. We didn't really make an argument. All right. Assuming for the purposes of here that we disagree that it's not hearsay. Just assume for the sake of the argument we say it's hearsay, so there it is. So then your argument is that it's harmless. I do think that's where the government's strongest position is with harmlessness, comparing it to DeLeon. And back to their theory of the case was that she was sort of acting as a good Samaritan. What's your case that says that their theory governs whether or not it's harmless? If they choose in closing argument to focus on something because they feel like, well, the hearsay statement came in, we're dead to rights on that, I don't think there's a case that would say their subsequent approach. To me, for harmlessness, you've got to establish that no reasonable juror wouldn't have found her guilty if we redact that statement. Correct. And there are factors that are listed here. The importance of the testimony is the factor that this court has set out, and that's where it gets to, the importance of the testimony. Everyone agreed this guy entered illegally. Whether it was cumulative, yes. The presence or absence of evidence corroborate or contradict. When you say everyone agreed, what's your authority for that? Where did they agree that Allende entered illegally? Well, there's nothing in their brief to the contrary, saying what they would have cross-examined him on. We have him crossing this major highway trying to jump a fence. We have the cross-examination question, and I understand that the hearsay came in first. But we also have our confession. The confession is pretty—as a prosecutor, it's always good to have a confession, and I actually wanted to point out how clear the confession was. This came in at evidence, that Carmona Ramos was asked, do you smuggle undocumented aliens in the United States? And she said, yes, sworn, signed statement. How much money were you to be paid for this instance? I know she pays $60, but I don't know how much I was going to get paid, she being Concha, the ringleader here. How do you know that the person at the San Ignacio church was illegally in the United States? Because Concha told me, and he told me, she also said, I was going to get a person that I was told to go pick up and take him to the bus. This is alien smuggling. This is a confession. This is her saying she expected to get paid. And I think that gets us over the harmless burden. Did she separately make a similar self-incriminating statement in a non-custodial context? When she's driving in the car and she doesn't yet know, this is all to lurch, right? That actually came in from McCarthy. The confession? The confession. But was she, am I right that the record had her whispering, I'm in this illegal alien thing, but I'm a mother, lie about it? Yes. Say you don't know me, delete the messages from your phone. The consciousness of guilt is definitely there. And I totally embrace the fact that some mistakes were made in this prosecution. I try not to Monday morning quarterback trial attorneys, but certainly we could have put together some better jury instructions and maybe even a better indictment. But Carmona Ramos committed this crime. She had every intent to get paid, to take him, and further his illegal reentry into this case. Back to factual impossibility, sting cases happen all the time in the drug context. And the federal agents have been very successful in the context of minors engaging in commercial sex acts, agents posing as minors on the Internet and doing a sting operation, an attempt that way. And this court has repeatedly held that when it comes to an attempt,  And in Medina, the case that directly dealt with alien transporting, the First Circuit quickly shut down that sufficiency challenge and said, no, factual impossibility does not defeat this conviction. Can I ask a question? Yes, ma'am. 1324 cases where you have the requirement that you have here of an illegal alien in the country. The last time I knew something about this, which has now been a while, there was an elaborate mechanism set up to either preserve the alien, i.e., keep him in the country until the trial was over, or to give defense counsel an opportunity to talk to him, etc., and get some kind of an agreement on that. But that was always premised on the notion, as I understood it, that the fact that he was an illegal alien was a critical element in the government's case. Is that true? I mean, am I off on another planet, or has it moved beyond what I'm familiar with? No, Your Honor. There is the material deposition witness process. Right. In the past, the typical alien smuggling cases, the alien was still there. And I think both parties looked for cases sort of more of this sting type, and really Medina was all that I was able to find. And I do want to alert the Court that I think we're going to have more sting cases going on in the future because law enforcement does not want to use aliens sort of as bait for smugglers. I read some of the cases from the 80s and the 90s, and we basically would let the alien sort of continue along the journey until they met up with the next person down the line, and that has safety implications for those individuals. And the Department of Justice does not want those type of operations to continue, so we might start seeing more sting cases where when you read through what happened, it sounds like good law enforcement for them to get the person in our country illegally, use the phone, find the person who was going to meet them at and take them to the bus stop. No, I think everyone agrees that's good law enforcement. The trouble is when you sting, you better ask for a jury charge that says just a substantial step towards completion of the underlying offense. Or charge a conspiracy. Well, yeah, who knows why that wasn't done. Because Concha certainly was arguably a co-conspirator and had lots of evidence of her role. But Carmona Ramos had the intent. She went there to get this person further down the line to the bus stop. Okay, but now you're slipping back into a theory that doesn't exist. Who cares whether she had the intent? Right? The only scienter in the 1324 that you charged is knowledge of the alien. Then transporting. That's where we get to the factual impossibility. The person who was trying to mail the defendant in Crow, who's trying to mail child pornography to a pedophile, or better yet, the defendant and farmer cited in our case, who thinks he's communicating with a minor. There was no minor. He's communicating with an undercover agent. And he says, how can I be convicted of trying to entice a minor into a sex act? There was no minor. And I think that's directly analogous to what Carmona is now saying. How can I be convicted of attempting to transport a legal alien when there was no alien? And I do think that's where the rubber hits the road. I do wish we had gotten an attempt instruction, but we didn't. So that's what we're faced with here. And with regard to the way the facts of this case came out, I do think it's important that there's a confession in part because I'm standing up here trying to defend a conviction. And even though errors were made, I do believe that justice was done in this case. And I think it's important that the United States always look at the big picture to see whether or not justice was done. With that being said, I think you have my argument. If there are no further questions, I'll yield my time. All right, thank you. Back to you, Ms. Greenberg. A few points I want to respond to. The evidence did not show that Carmona Ramos committed the crime with which she was charged and under which the jury was instructed. Even at argument, the government did not argue that there was evidence sufficient to show that she knew about Allende, that she attempted to transport Allende. And I want to make a particular point about the factual impossibility issue because I don't think it was clear in my opening. We are not arguing factual impossibility or legal impossibility. We are arguing a general principle of legality. All of the factual impossibility cases that the government cites deal with statutes where Congress defines the crime and then also says an attempt to commit that crime is itself an offense. The drug statute, 21 U.S.C. 846, is a good example of that. The child enticement statute in 18 U.S.C. 2422. We are saying that there is no theory of attempt that appears in the criminal code or the immigration code that comports with the theory that the government is advancing. Well, 2421 or 22, the Mann Act, it's exactly the same, isn't it? The word attempt is in the element of transportation. It's exactly written just like this statute. I'm not sure of that. I looked at the statutes in the cases that the government cites for factual impossibility. The child enticement statute, the element is attempting to induce the child. And here it's attempting to transport. Pardon? Here it's transport or attempt to transport. Correct. How is that different? The attempt to transport, attempt modifies the act of transport. Attempting to transport is an act that will support the alien transportation offense. But it still is required that there be an actual alien. Just because your time is running out. She shifts. She has now conceded that it was a hearsay statement. But then her stress is on it's harmless. So what's your best case that a defendant's own confession to the element wouldn't make another witness' statement of that fact harmless? Well, first of all, I believe that the evidence didn't show that Carmona Ramos confessed to knowledge of Allende's illegal entry. She confessed to knowledge of an illegal alien, correct? She confessed to her belief that the agent she was transporting was an undocumented. If I don't accept your suggestion that she had to have specific knowledge of this individual, so I'm just, I view element one to be knowledge that an alien was present or entered. What's your case that a defendant's own confession to that wouldn't make harmless an agent's illicit hearsay statement to the same fact? I don't, the case is not coming to mind. But what is coming to mind is the government's burden to prove the harmlessness of testimonial hearsay. The government must prove beyond a reasonable doubt that that testimonial hearsay did not contribute to the verdict. And I do not believe the government can prove that in this case. Any other questions? Thank you. Thank you, Ms. Greenberg. Thank you, Ms. Freel, for your briefing annual argument.